FILED
HARRISBURG, PA

FEB 1 9 2025

PER _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :

                        :    CR. NO. 1:25-CR-48

           v.            :

                        :

(1) ROY LADELL WEAVER,       :    (Judge WILSON    )
(2) PRO DIESEL WERKS, LLC,    :

                        :

          Defendants :

## INDICTMENT

THE GRAND JURY CHARGES:

### COUNT 1
18 U.S.C. § 371
(Conspiracy to Defraud the United States and to
Violate the Clean Air Act)

At times material to the Indictment:

### Relevant Individuals and Entities

1.    PRO DIESEL WERKS, LLC, (PRO DIESEL WERKS) was a company with facilities in Lebanon, Pennsylvania, in the Middle District of Pennsylvania, and Reading, Pennsylvania, in the Eastern District of Pennsylvania. PRO DIESEL WERKS provided vehicle repair and maintenance and performance enhancement services, including services on diesel engines and vehicle emission systems.

2.    ROY LADELL WEAVER (WEAVER) was an owner and

operator of PRO DIESEL WERKS. As owner and operator, WEAVER made decisions for the business and gave direction to employees of PRO DIESEL WERKS. WEAVER also spoke to customers and performed diagnostic and mechanical work and computer software adjustments on customer vehicles.

3.    The United States Environmental Protection Agency (EPA) was an agency of the United States responsible for enforcing and administering the Clean Air Act.

## Emissions Systems and Regulations

4.    The purpose of the Clean Air Act was to protect and enhance the quality of the nation's air resources, thus promoting public health and welfare by, among other things, reducing the emission of air pollutants from motor vehicles.

5.    The Clean Air Act and its implementing regulations established standards limiting the emission of nitrogen oxides, particulate matter, hydrocarbons, carbon monoxide, and other air pollutants, from various classes of motor vehicle engines, including diesel engines.

6.    To meet emissions standards, manufacturers of vehicles with

2

diesel engines installed a variety of hardware emissions control devices, including exhaust gas recirculation systems, selective catalytic reduction systems, diesel particulate filters, and diesel oxidation catalysts. After verifying that the emissions control devices conformed to emissions standards, the EPA issued Certificates of Conformity to vehicle manufacturers specific to each annual vehicle class.

7.    To enforce compliance with emissions standards, the EPA, pursuant to its regulatory authority, created regulations requiring manufacturers to install on-board diagnostic systems (OBDs) on vehicles. OBDs monitored emissions-related sensors and the hardware emissions control devices of diesel engine systems and components.

8.    OBDs alerted vehicle operators, through a malfunction indicator light on the vehicle's dashboard, when a component of the hardware emissions system deteriorated or malfunctioned. When the malfunction was left unaddressed and the vehicle's emissions exceeded certain emissions level thresholds, the OBD forced the vehicle's engine to shut down, or limited the vehicle to a maximum speed of as low as five miles per hour; an effect commonly referred to as "limp mode" or "power reduced mode."

9.    Repairs for malfunctioning or deteriorating emissions systems on diesel vehicles in "limp mode" ordinarily cost between approximately $1,000 and $10,000. Repairs ordinarily took several days or weeks to complete, during which time the vehicles were inoperable.

10.    The Clean Air Act made it a crime for any person to knowingly tamper with or render inaccurate vehicle emissions monitoring devices and methods required to be maintained and followed under the Act, including OBDs.

### Emissions System Tampering Devices

11.    There were various methods to defeat the required emission control systems on vehicles with diesel engines. Disabling the emissions control systems defeated their ability to limit the emission of pollutant gases and particulate matter into the atmosphere.

12.    One method used to disable hardware emissions control systems was to remove the portion of the vehicle's exhaust system that contained the emission control devices and replace it with a section of hollow exhaust tubing or an aftermarket "straight pipe" that did not limit emissions. The emission components were no longer in place to reduce pollutant gases and particulate matter being emitted to the atmosphere.

4

13.    Another method used to disable emissions control systems was to temporarily remove hardware emission control devices, such as the diesel oxidation catalyst system and the diesel particulate filter, hollow them out to remove their operational internal contents, such as catalyst substrate, and then reconnect them to the exhaust pipe to create the false appearance that the hardware devices were still intact, though their effective function was eliminated.

14.    Any physical modification that removed emission control system hardware or its effectiveness, commonly referred to as a "delete," would be detected by the vehicle's OBD and would necessitate a contemporaneous disabling of the OBD to prevent triggering the malfunction indicator light and the vehicle going into "limp mode." The practice of using a defeat device to manipulate the software of an OBD system to prevent the OBD from monitoring an emission control system hardware delete was commonly referred to as a "tune" or "tuning" the vehicle. When a vehicle was "tuned" in this way, the vehicle was able to run with normal (and even increased) horsepower, torque and fuel efficiency, but with significantly increased air pollutant emissions being released into the atmosphere.

15.    One type of defeat device was an apparatus that plugged into a vehicle's data link connector to "tune" the OBD. Those defeat devices, when plugged in, allowed the vehicle operator to activate at will the software modifications that manipulated the OBD.

16.    Another type of defeat device was a software program that reprogrammed, or "flashed," the vehicle's diesel engine computer module, through use of a computer or electronic device that modified the OBD after being connected to the vehicle on a single occasion. Those defeat devices permanently adjusted the diesel engine timing and other parameters to bypass the OBD.

### The Conspiracy

17.    The factual allegations of paragraphs 1 through 16 of this Indictment are incorporated here.

18.    From in or about 2013, the exact date being unknown to the Grand Jury, and continuing thereafter until on or about March 12, 2024, in the Middle District of Pennsylvania, and elsewhere, the defendants,

**ROY LADELL WEAVER,** and
**PRO DIESEL WERKS, LLC,**

6

knowingly and willfully conspired, combined, confederated, and agreed together and with other persons both known and unknown to the Grand Jury, to:

    a.    defraud the United States by impairing, impeding, obstructing, and defeating the lawful functions of the federal government, that is, the EPA's function of implementing and enforcing emissions standards for air pollutants for diesel vehicles under the Clean Air Act, in violation of Title 18, United States Code, Section 371; and

    b.    violate the Clean Air Act by tampering with and rendering inaccurate monitoring devices and methods required pursuant to the Clean Air Act to be maintained and followed, in violation of Title 42, United States Code, Section 7413(c)(2)(C).

## Manner and Means

The objects of the conspiracy were accomplished, in part, by the following manner and means:

19.    ROY LADELL WEAVER agreed with other co-conspirators to perform deletes and tunes to defeat the emission control systems on customers' diesel vehicles, which generated revenue for PRO DIESEL WERKS.

20.    ROY LADELL WEAVER and other co-conspirators publicized the ability and willingness of PRO DIESEL WERKS to perform deletes and tunes, on PRO DIESEL WERKS's website, in communications with individual customers, and by word of mouth.

21.    ROY LADELL WEAVER and other co-conspirators performed and caused to be performed some deletes and tunes for customers of PRO DIESEL WERKS at the customers' request. In other cases, other co-conspirators diagnosed emission and other problems with customers' diesel vehicles, and WEAVER and other co-conspirators made recommendations to customers to have PRO DIESEL WERKS perform deletes and tunes on the customers' vehicles.

22.    ROY LADELL WEAVER and another co-conspirator directed

co-conspirator-mechanics employed at PRO DIESEL WERKS to perform deletes on customers' diesel vehicles.

23.   ROY   LADELL   WEAVER   and   another   co-conspirator purchased straight pipes, tuning software and other equipment needed to perform the deletes and tunes on customers' diesel vehicles.

24.   Co-conspirator-mechanics at PRO DIESEL WERKS, acting at the direction of ROY LADELL WEAVER and another co-conspirator, performed   deletes   on   customers'   diesel   vehicles   at   PRO   DIESEL WERKS's Lebanon, Pennsylvania, location by removing the portion of the vehicles' exhaust system that contained the hardware emission control devices and replacing them with aftermarket straight pipes that did not limit emissions.

25.   In other cases, co-conspirator-mechanics at PRO DIESEL WERKS, acting at the direction of ROY LADELL WEAVER and another co-conspirator, performed deletes on customers' diesel vehicles at PRO DIESEL WERKS's Lebanon, Pennsylvania, location by temporarily cutting out the portion of the vehicles' exhaust systems that contained hardware emission control devices, hollowing out the devices to remove their operational internal contents, and then welding the cut-out portions

of the exhaust systems back onto the vehicles, so that the exhaust systems appeared to be intact but did not actually limit emissions.

26.    ROY LADELL WEAVER performed "tunes" on customer vehicles being deleted by PRO DIESEL WERKS's co-conspirator-mechanics. ROY LADELL WEAVER performed the tuning, at first by using handheld plug-in devices to disable the vehicles' OBDs from monitoring the deletion of hardware emission control devices, commonly called "tuner boxes," and later by using tuning software programs stored on a laptop computer that permanently disabled the vehicles' OBDs.

27.    ROY LADELL WEAVER and other co-conspirators took steps to conceal the deletes and tunes by eliminating the paper trail, using code words for the deletes and tunes such as "emissions upgrade" and "Option B."

28.    ROY LADELL WEAVER, other co-conspirators, and PRO DIESEL WERKS charged customers between approximately $2,000 and $4,000 per vehicle to remove and disable the emission control systems on motor vehicles with diesel engines.

## Overt Acts

In furtherance of the conspiracy and to affect the objects of the conspiracy, the following overt acts, among others, were committed in the Middle District of Pennsylvania and elsewhere:

29.    On or about October 3, 2023, ROY LADELL WEAVER and other co-conspirators removed and disabled and caused to be removed and disabled (deleted and tuned) the emission control system on a PRO DIESEL WERKS customer's 2011 GMC Sierra 2500.

30.    On or about February 12, 2024, ROY LADELL WEAVER and other co-conspirators removed and disabled and caused to be removed and disabled (deleted and tuned) the emission control system on a PRO DIESEL WERKS customer's 2015 Chevrolet Silverado 2500.

31.    Between on or about September 5, 2023 and March 11, 2024, ROY LADELL WEAVER and other co-conspirators removed and disabled and caused to be removed and disabled (deleted and tuned) the emission control devices on a PRO DIESEL WERKS customer's 2018 Ford F-550.

32.    Between on or about March 7 and 11, 2024, ROY LADELL WEAVER and other co-conspirators removed and disabled and caused to

be removed and disabled (deleted and tuned) the emission control devices on a 2012 Ford F-450 brought to PRO DIESEL WERKS.

All in violation of Title 18, United States Code, Section 371.

THE GRAND JURY FURTHER CHARGES:

## COUNT 2
42 U.S.C. § 7413(c)(2)(C)
(Violation of the Clean Air Act)

33.   The factual allegations of paragraphs 1 through 16 are incorporated here.

34.   Between on or about September 5, 2023 and March 11, 2024, in the Middle District of Pennsylvania, and elsewhere, the defendants,

**ROY LADELL WEAVER,** and
**PRO DIESEL WERKS, LLC,**

did knowingly falsify, tamper with, render inaccurate, fail to install, and aided and abetted the falsification, tampering with, rendering inaccurate, and failure to install, a monitoring device and method required to be maintained under the Clean Air Act, that is, the defendants disabled the on-board diagnostic system (OBD) on a diesel Ford F-550 with Pennsylvania license plate ZME8288 to prevent the OBD from monitoring the detachment and removal of the hardware emission control devices on the vehicle.

12

In violation of Title 42, United States Code, Section 7413(c)(2)(C), and Title 18, United States Code, Section 2.

THE GRAND JURY FURTHER CHARGES:

**COUNT 3**
42 U.S.C. § 7413(c)(2)(C)
(Violation of the Clean Air Act)

35.    The factual allegations of paragraphs 1 through 16 are incorporated here.

36.    Between on or about March 7 and 11, 2024, in the Middle District of Pennsylvania, and elsewhere, the defendants,

**ROY LADELL WEAVER,** and
**PRO DIESEL WERKS, LLC,**

did knowingly falsify, tamper with, render inaccurate, fail to install, and aided and abetted the falsification, tampering with, rendering inaccurate, and failure to install, a monitoring device and method required to be maintained under the Clean Air Act, that is, the defendants disabled the on-board diagnostic system (OBD) on a diesel Ford F-450 with Pennsylvania license plate ZNA4484 to prevent the OBD from monitoring the detachment and removal of the hardware emission control devices on the vehicle.

In violation of Title 42, United States Code, Section 7413(c)(2)(C),

13

and Title 18, United States Code, Section 2.

A TRUE BILL

JOHN C. GURGANUS
Acting United States Attorney

FOREPERSON

*[signature]*

DAVID C. WILLIAMS
Assistant United States Attorney

February 19, 2025

Date

*Patricia Miller*

PATRICIA C. MILLER
Special Assistant United States
Attorney

14